UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF VIRGINIA

Ernest S. Hendry, Jr.            :

and                              :

Judith V. Hendry                 :

v.                               : Civil Action No. 1:14-cv-1455

The Georgelas Group, Inc.        : JCC / TCB

and                              :

Francis J. Pelland               :

## MEMORANDUM IN OPPOSITION TO MOTION TO DISMISS AND RULE 56 MOTION

Plaintiffs incorporate by reference their own Motion For Summary Judgment beginning on p.35 at the end of the Complaint and ending at page 50. This Motion For Summary Judgment including argument and caselaw serves as rebuttal to the Georgelas Motion to Dismiss and Rule 56 Motion.

Plaintiffs also incorporate by reference their Prologue and Affidavit, fifty Exhibits and five complete depositions that were filed with the Complaint. Plaintiffs also incorporate two recently filed pleadings -- Memorandum Detailing How the Hendrys Were Denied Due Process in Chancery No. 89-969 and Material Facts.

The gravamen of this action is that there was a complete disregard for the statutes in Virginia regarding Infant owners of real property. The Hendrys have raised a jurisdictional issue thereby which constitutes *Coram Non Judice* or Count I of the Complaint.

In *Payne v. Consolidation Coal Company*, 538 F.Supp. 950 (W.D. Va., 1982) it was held: "Since the statute creates the special jurisdiction of the state court in these matters, a lack of **substantial compliance** makes a proceeding under these statutes void *ab initio* and *in toto* because there is a want of jurisdiction." [Emphasis added.] In *Payne v. Consolidation Coal Company*, 607

F.Supp. 378 (W.D. Va., 1985), it was stated: "The state court failed to **substantially comply** with Va. Code Section 8-676 which set forth jurisdictional requirements for an action to sell, encumber or lease infants' land. [Emphasis added.] The lack of **substantial compliance** made the proceedings void *ab initio* and *in toto* because the court lacked jurisdiction. [Emphasis added.] The language from these two cases is plain. The two *Payne* cases were decided in the 1980s, just before *Georgelas v. Hendry v. Boniface.*

  Defendant Georgelas argues that the Circuit Court of Arlington had jurisdiction. In most instances jurisdiction is obvious. In the case of Infants jurisdiction is conferred by statute. The statutes concerning Infants in *Georgelas* were disregarded. It is unnecessary to repeat the careful details of how the statutes were disregarded that appear in the Complaint and the Prologue and Affidavit. Plaintiffs' Motion For Summary Judgment beginning on p.35 sets forth lurid details of misconduct which frankly set *Georgelas* apart from any other Infant cases that Plaintiffs have found. The two *Payne* cases serve as an illustration; there was no evidence whatsoever that Consolidation Coal Company did anything to cheat the Infants or that the company acted in bad faith. The verdict given was that the company needed to compensate the Infants a fair price for the coal. In *Georgelas* you have Judge Kendrick taking jurisdiction over the case when it was impossible for him lawfully to do so at the behest of Pelland and with the concurrence of Georgelas through its counsel. You have Judge Monroe asking no impertinent questions to assure that the Infants' rights had been protected, but just verbally stating that the children would not need to contribute to the settlement. You have Judge Sheridan, who was fully informed that the statutes re Infants had not been complied with (EXH. EIGHTEEN), allowing a five-year right of first refusal to be placed on the children's property and a $1.2 million lien to also be placed on the property subjecting the children's land to the risk of foreclosure. These facts suggest that the judges were as much in the pocket of Georgelas as the Hendrys' lawyer.

  The moment of truth came early in Chancery No. 87-671. There was at the time of the lawsuit a residential site plan on the property which Pelland told his clients they could not object to. [In actuality, one individual who objected to every rendition of a site plan was Judith Hendry. Pelland warned her that she must not say that, even in a deposition.] Forty-one $2 million houses across the river from Georgetown could have a potential value of $82 million. The allure of all this money was too much for Pelland who realized that he should switch his loyalties while still pretending to represent the Hendrys and continuing to charge them for his services. After the case was over and the Hendrys were obligated to pay Georgelas $1.5 million plus interest, Pelland did invoke the Infant defense

2

(EXH. TWENTY), something he never used against Georgelas. The threat of a second lawsuit was something unscripted, and Pelland hit the panic button. Thus, the admission of *scienter*.

As for Judge Kendrick, he had to know that the contract had to be ratified under a guardian *ad litem* procedure at the outset. It was too late for that because a suit based on the contract had already been filed. The allure of $82 million of aggregate wealth was too much for him. He should have followed the law and protected the rights of innocent children, a senile old lady and the rest of the Hendry family. Pelland knew about the Infant defense and a host of other defenses which he refused to use. In appointing Pelland as guardian *ad litem* for the case, Kendrick was ignoring the statutes by allowing the case to proceed, and, incidentally, he appointed the most conflicted man on the planet as guardian *ad litem* for the children.

*Coram Non Judice* is the penultimate cause of action. It grants relief instantaneously when recognized. Georgelas even resorts to citing a case taken from colonial Virginia and contrives a two-year statute of limitations on a nullity. Defendant Georgelas says that Virginia does not recognize *Coram Non Judice* as a cause of action. It doesn't have to. The first thing a judge must do is to determine whether he has jurisdiction over a case. It is pretty embarrassing for a judge's orders to be disregarded because of a want of jurisdiction. The shortcomings of Judge Thomas Monroe and Judge Paul Sheridan have also been outlined in detail in the Complaint as well as the Prologue and Affidavit.

In addition to the two *Payne* cases, the Hendrys have cited *Michie's Jurisprudence*, *Ferebee v. Todd*, 154 Va. 293, 153 S.E. 705 (1930), *Coleman v. Virginia Stave Company*, 112 Va. 61 (1911), *Clark v. George*, 161 Va. 104 (1933), *Tulin v. Johnston*, 152 Va. 587 (1929), *Brenham v. Smith*, 120 Va. 30 (1916), *Anthony v. Kasey*, 83 Va. 338 (1987), *Frantz v. Lester*, 82 W.Va. 328, 95 S.E. 945, *Flannery v. Chiles*, 222 Ky. 649 (1928) and *Bracy v. Miller*, 169 Ark. 1115, 278 S.W. 41, 43 A.L.R. 114 (1925). In terms of authorities cited re Infants, the score is now Hendrys' twelve citings to Georgelas' zero citings. If the Hendrys were to continue their research of Infant caselaw, they believe that the score would become even more lopsided. There is a universal standard that the rights of Infants must be protected, and, as the caselaw shows, the failure to **strictly comply with** Infant statutes has draconian consequences. Does anyone in his right mind really believe that if the Hendrys had failed to make a single payment on the Settlement Agreement and the property went into foreclosure that Judges Kendrick, Monroe and Sheridan would suddenly have had an epiphany and decided all of a sudden to treat the Hendrys with absolute

fairness and to admit their collective misconduct?

Defendant Georgelas has not cited one single source on the Infant statutes or their interpretation. Once it is recognized that the Circuit Court of Arlington never had jurisdiction, we are left with a nullity. The Hendrys paid $2,085,033.11 because of betrayal, collosal greed and egregious misconduct. Equity requires that the Hendrys be reimbursed with interest and costs.

Counsel for Georgelas tries to get his client off the hook by stating that the Hendrys named the wrong Defendant. The Hendrys have been playing shell games with various Georgelas companies for almost forty years. See the first part of Material Facts that E. Hendry recently filed. When Georgelas was flatly rejected to purchase the property for residential development, a different strategy was employed to get the property through a front man -- Boniface. This was the reason that checks were written on companies with names that did not have Georgelas in the title. The application for a retirement home was simply a ruse to get the Hendrys to sign a contract with Boniface. The rights of the children did not matter. The careful delineation of a lot for Anne P. Hendry did not matter. All that mattered was a contract. The Hendrys unfortunately had a lawyer whose loyalty was for sale. Thus, the corruption of the Hendry lawyer and the corruption of the court. Counsel for Georgelas did not account for an eleven year gap from the time Georgelas & Sons, Inc. became inactive and Georgelas Group, LLP was incorporated. Certainly the family business was continuing under another entity for those eleven years. If not, the corporate veil should be pierced so that the Hendrys can sue the officers of Georgelas & Sons, Inc. who absconded with over $2 million of their money. Who took on the assets and liabilities of Georgelas & Sons, Inc.? Equity requires that the Hendrys be granted a substitute corporation or named individuals to replace the current named Defendant.

In its attempt to get the Court to exclude fraud as a basis for Count II, Defendant Georgelas states that not a single fraudulent act was alleged in the Complaint. Georgelas acted as a principal with agents doing things that were deceitful or unethical. In the period leading up to the execution of the Option Agreement (EXH. SIX), Boniface was really fronting for Georgelas while mentioning other companies that were better suited to be in the retirement home business. For example, Marriott Corporation has become a leading participant in building and managing retirement homes. Georgelas never had constructed or managed a single retirement home in its history.

It was Boniface who got Anne P. Hendry to sign the First Amendment contract without counsel present while her son was away on a ten-day vacation

(EXH. SEVEN). It was Boniface who continued to assert undue influence on the Hendry Mother to overrule her son and daughter to keep a foothold on the property in the guest cottage. E. Hendry had to go through Arlington County's zoning department to get Boniface and Georgelas evicted. Pelland came aboard the Georgelas team early as shown by the ambiguous letter that he ghosted for his client to send out (EXHS. TWENTY-FOUR, TWENTY-FIVE and TWENTY-SIX). The very fact that a void contract and a lawsuit that was defective on its face was allowed to proceed to within five days of trial when Pelland was fully aware of the Infant defense is *prima facie* evidence of collusion and fraud. In the Complaint as well as the Prologue and Affidavit, it is documented how Pelland helped Katz with the deposition of Elizabeth Vercoe. Katz returned the favor by trying to get the Hendry son to blame Gajarsa for the bad advice of not objecting to the residential site plan. Gajarsa was only advising the Hendry Mother at that time and did not so advise the Hendry son.

During the malpractice case, both Thomas Georgelas and Gerald Katz testified on behalf of Pelland without the compulsion of a subpoena. Why would a licensed architect and a successful attorney stay in a witness room all day without compensation to help Pelland unless they felt obligated to help him as part of the Georgelas team?

There is a question whether the Hendrys were even given due process in Chancery No. 89-969 . By acting in such an outrageous fashion, Judge Kendrick provided the Hendrys with the motivation to move out of Arlington and out of Virginia. The imprimatur of legitimacy was stamped on the case. It has taken extraordinary investigation and research to realize that the initial case filed by Georgelas was illegal and that the Hendry lawyer knew that there was a complete defense to it. Why would the Hendry lawyer not end the case immediately, unless, of course, he was a member of the Georgelas team?

Respectfully submitted,

*/s/ Ernest S. Hendry*
Ernest S. Hendry, Jr.

*/s/ Judith Ventura Hendry*
Judith V. Hendry

Certificate of Service

I hereby certify that on this 2nd day of January, 2015, by first-class mail, I mailed the foregoing Memorandum In Opposition to Motion to Dismiss and Rule

5

56 Motion to Gerald I. Katz, Esq., Suite 700, 2010 Corporate Ridge, McLean, Virginia 22102; I mailed by first-class mail the same pleading to Jordan Coyne LLP, 10509 Judicial Drive, Suite 200, Fairfax, Virginia 22030; and I mailed by first-class mail the same pleading to The Clerk of the Court, Albert V. Bryan U.S. Courthouse, 401 Courthouse Square, Alexandria, Virginia 22314 to be filed.

*Ernest S. Hendly, Jr.*



Hendry
4207 Shepherd Grade Rd
Shepherdstown WV 25443

U.S. MARSHALS
INSPECTED

The Clerk of t
Albert V. Bryan
 U.S. Courtho
401 Courthouse Sq
Alexandria, Virgin